# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JOHN DOE, on behalf of himself and all others similarly situated<br>　　　　　　Plaintiff,<br>　　v.<br>SSM HEALTH CARE CORPORATION d/b/a SSM HEALTH,<br>　　　　　　Defendant. | CASE NO. 4:23-cv-00022<br><br>(Removal from: the Missouri Circuit Court Twenty-Second Judicial Circuit, City of St. Louis, 2222-CC10014)<br><br>Jury Trial Demanded |

## NOTICE OF REMOVAL

SSM Health Care Corporation d/b/a SSM Health (SSM Health) removes this putative class action to federal court pursuant to both the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), and the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d). In support of this removal, SSM Health provides the following "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a):

## NATURE OF THE CASE

1. On December 5, 2022, plaintiff John Doe filed a Petition against SSM Health in the City of St. Louis Circuit Court, Missouri, Petition No. 2222-CC10014.

2. Plaintiff served SSM Health with the Petition on December 7, 2022.

3. Plaintiff's nine-count Petition challenges SSM Health's alleged practices on SSM Health's "websites" as claimed violations of Missouri law. (Pet. ¶¶ 164-325.)

4. SSM Health offers its patients the opportunity to have access to their health records electronically through an online patient portal, available at https://www.ssmhealth.com/mychart. Nearly every page of SSM Health's website, www.ssmhealth.com, links directly to the SSM Health MyChart patient portal.

5. Plaintiff's proposed class definition includes the SSM Health MyChart patient portal, as an SSM Health affiliated website. (*See id.* ¶ 150 ("During the fullest period allowed by law, all Missouri citizens who are, or were patients of SSM Health Care Corporation, or any of its affiliates and who exchanged communications at *Defendant's websites, including www.ssmhealth.com and any other SSM Health Care Corporation affiliated website* that caused disclosures of patient personally identifiable information and communications to third parties, including (but not limited to) Facebook.") (emphasis added).)

6. Plaintiff alleges that SSM Health deploys "source code" on its website that causes personally identifiable information to be transmitted to third parties. (*Id.* ¶ 19.) This source code, including the Facebook Meta Pixel, is an analytics tool that allows SSM Health "to analyze a user's experience and activity on the website to assess the website's functionality and traffic" and provides insight into SSM Health's advertising and marketing efforts. (*Id.* ¶ 72.)

7. Through third party source code, plaintiff alleges that SSM Health discloses personally identifiable information including internet protocol (IP) addresses (*id.* ¶¶ 31-32), cookies (*id.* ¶¶ 33-35), "browser fingerprints," (*id.* ¶¶ 37-39), and "unique user identifiers" such as "Facebook ID" (*id.* ¶¶ 40-41).

8. Plaintiff alleges that he is a SSM Health patient (*id.* ¶ 8), and that he used SSM Health's websites regarding treatment for his medical conditions (*id.* ¶¶ 88-89).

9. Based on these facts, plaintiff seeks to bring this case as a putative class action, (*id.* ¶ 150), and asserts claims for: (1) interception of wire communications in violation of Mo. Rev. Stat. § 542.402 (*id.* ¶¶ 164-91); (2) tampering with computer data in violation of Mo. Rev. Stat. §§ 569.095 and 537.525 (*id.* ¶¶ 192-214); (3) breach of fiduciary duty of confidentiality (*id.* ¶¶ 215-22); (4) breach of implied in fact contract (*id*. ¶¶ 223-56); (5) unjust enrichment/quasi contract (*id.*

2

¶¶ 257-64); (6) unlawful practices in violation of Mo. Rev. Stat. § 407.020 (*id.* ¶¶ 265-83); (7) invasion of privacy—intrusion upon the seclusion of another (*id.* ¶¶ 284-98); (8) breach of covenant of good faith and fair dealing (*id.* ¶¶ 299-317); and (9) bailment (*id.* ¶¶ 318-25).

## BASIS FOR REMOVAL

I.  **Removal is Proper Pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1).**

10. SSM Health first removes this case pursuant to the Federal Officer Removal Statute, codified at 28 U.S.C. § 1442(a). That statute permits removal when the defendant is "the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency therefore, in an office or individual capacity, for or relating to any act under color of such office …." *Id.* § 1442(a)(1).

11. The Supreme Court has directed that the Federal Officer Removal Statute is to be "liberally construed," and defendants routinely remove under this statute when they are acting under color of federal office. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007) (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). To do so, a defendant must show that it "acted under the direction of a federal officer," that "there was a causal connection between its actions and the official authority," and that "there is a colorable federal defense to the plaintiff's claims." *Graves v. 3M Co.*, 17 F.4th 764, 767 (8th Cir. 2021).

12. These requirements are met here. As detailed further below, since 2004, the federal government – through executive order, legislation, and regulatory action – has directed and overseen a public-private initiative to develop a nationwide infrastructure for health information technology. It has incentivized providers who participate in the Medicare and Medicaid programs (like SSM Health) to offer patients online access to their records, and to optimize patient engagement with their medical information.

3

### A.     *The Meaningful Use / Promoting Interoperability Program*

13.     This federal initiative formally began in 2004, when President Bush issued an Executive Order establishing a National Health Information Technology Coordinator, now known as The Office of the National Coordinator for Health Information Technology (ONC). *See* Exec. Order 13335 (Apr. 27, 2004). The Order's purpose was to spark a "nationwide implementation of interoperable health information technology in both the public and private health care sectors." *Id.*

14.     Five years later, Congress codified the ONC in the Health Information Technology for Economic and Clinical Health Act of 2009. 123 Stat. 115, 247 (2009). At that time, Congress also allocated billions of dollars to the Centers for Medicare & Medicaid Services (CMS) to "invest in the infrastructure necessary to allow for and promote the electronic exchange and use of health information for each individual in the United States consistent with the goals outlined in the strategic plan developed by the [ONC]." *Id.*

15.     Consistent with its mandate, the ONC has published guidance for private providers to follow, including through five-year strategic plans. In the 2015-2020 plan, it dictated that "federal agencies" were to "collaborate with . . . private stakeholders to . . . build a culture of electronic health information access and use." ONC, *Federal Health Information Technology Strategic Plan 2015-2020*, available at https://dashboard.healthit.gov/strategic-plan/federal-health-it-strategic-plan-2015-2020.php.

16.     And, in the 2020-2025 plan, it noted that this has already happened, saying: "The federal government and private sector have worked together to help digitize health information and healthcare." ONC, *Federal Health Information Technology Strategic Plan 2020-2025*, available at https://www.healthit.gov/sites/default/files/page/2020-01/2020-2025FederalHealthIT%20StrategicPlan_0.pdf.

4

17. One critical aspect of this strategy was the CMS' "Meaningful Use" program, now referred to as the Promoting Interoperability Program. 42 C.F.R. § 495.2-495.370. This federal program aimed to increase patients' "meaningful use" and engagement with electronic health records. *See* CMS.gov, *Promoting Interoperability Programs*, available at https://www.cms.gov/Regulations-and-Guidance/Legislation/EHRIncentivePrograms ("In 2011, CMS established the Medicare and Medicaid EHR Incentive Programs (now known as the Medicare Promoting Interoperability Program) to encourage EPs, eligible hospitals, and CAHs to adopt, implement, upgrade, and demonstrate meaningful use of certified electronic health record technology (CEHRT)").

18. Through 2021, the promoting interoperability program offered incentive payments to providers who participated in Medicare and Medicaid when they met specific criteria for increasing patient engagement with electronic health records. Now, participants that do not demonstrate "meaningful use" during reporting periods may be subject to downward payment adjustments under Medicare. *See* CMS.gov, *2022 Medicare Promoting Interoperability Program Scoring Methodology Fact Sheet*, available at https://www.cms.gov/files/document/2022-scoring-methodology-fact-sheet.pdf.

19. The requirements include: adopting federally certified technology, giving patients electronic access to health records and physicians, making it easier for patients to access electronic health information via smartphones, and making the records downloadable and transferable. *See* CMS.gov, *2022 Medicare Promoting Interoperability Program Requirements*, available at https://www.cms.gov/regulations-guidance/promoting-interoperability/2022-medicare-promoting-interoperability-program-requirements.

20. To achieve those specifications, CMS recommends that providers create patient "portals" that allow users to communicate directly with their providers and immediately access (or transfer) their medical records. *See, e.g.,* ONC, *Patient Engagement Playbook*, available at https://www.healthit.gov/playbook/pe/introduction/ ("Patient portals hold enormous potential to improve patient care and practice workflow."). The ONC has further specified how providers can optimize such portals; "how a patient portal helps achieve meaningful use requirements"; and how a provider can "actively promote and facilitate portal use." ONC, *How to Optimize Patient Portals* (2013), https://www.healthit.gov/sites/default/files/nlc_how_to_optimizepatientportals_for_patientengagement.pdf.

21. In addition to this guidance, for CMS's own website, which likewise includes an online portal, CMS relies on third-party marketers, including Google and Facebook. *See generally* Medicare.gov, Privacy Policy, https://www.medicare.gov/privacy-policy. For instance, CMS engages Facebook to "place[] a cookie or pixel . . . for conversion tracking on certain pages of CMS website. [This] allows Facebook Ads to measure the performance of CMS advertisements based on consumer activity and to report the ad performance to CMS." *See* HHS, *Third Party Websites and Applications Privacy Impact Assessment – Facebook Ads* (Sept. 4, 2018), available at https://www.hhs.gov/pia/third-party-websites-and-applications-pia-facebook-ads.html.

22. Under plaintiff's own allegations, SSM Health thus faces liability in this case for doing precisely what the federal government wanted SSM Health to do—create a patient portal for its patients, and make this portal readily accessible online. (Pet. ¶¶ 164-91; *see also, e.g., id.* ¶ 169 (alleging SSM Health violated the Missouri Wiretap Act by allegedly intercepting "Plaintiff's and Class Members' wire communications for the purpose of disclosing those communications to third parties including Facebook").)

### B. *SSM Health is a "Person"*

23. By the plain terms of the statute, removal is permitted by "any person acting under that officer." 42 U.S.C. § 1442(a)(1).

24. While the statute is silent as to the definition of a "person," organizations and corporate defendants have routinely removed under this provision and been deemed a "person" under the statute. *See, e.g.*, *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010).

25. SSM Health is a Missouri corporation (Pet. ¶ 7), and thus is a person under the statute.

### C. *SSM Health is Acting Under a Federal Officer*

26. This element focuses on the relationship between the federal government and the private entity. It asks whether the entity is assisting or helping to carry out a federal officer's duties or tasks, and whether the relationship between the government and private entity involves "detailed regulation, monitoring, or supervision." *Watson*, 551 U.S. at 153. To satisfy this element, a private person's actions "must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Id.* at 152 (emphasis in original).

27. These factors show that removal is appropriate here. *First*, SSM Health is "helping the government produce" the nationwide, interoperable information technology infrastructure for health information. The federal government itself has repeatedly acknowledged the private sector's essential role in the project, including stating that "the federal government and private sector have worked together to help digitize health information and healthcare." *See* CMS, *Promoting Interoperability Programs*, 2020-2025 Strategic Plan.

28. *Second*, in the absence of SSM Health's actions (and the work of comparable medical providers throughout the country), the federal government would be left alone to complete

7

its mission to make patient portals available nationwide. As its efforts to digitize information and increase patient engagement with Medicare beneficiaries underscores, the government would likely attempt to do exactly that.

29.     *Third*, the government has specified how to best enhance patient engagement, including through a patient portal. It has clarified how to generally design the portals and has told entities how best to market their on-line resources. Furthermore, through its own engagement with third-party services, it has demonstrated this behavior for private entities.

30.     *Finally*, the government has created an office dedicated to this issue and has closely monitored the work of private entities (like SSM Health). It has also supervised the general development of this information technology infrastructure. As the Northern District of Ohio has held: "The aim of PIP is to create a unified system of patient electronic health records. Because Defendant's participation assisted the federal government in achieving that goal, Defendant has satisfied the 'acting under' prong." *ProMedica*, 2020 WL 7705627, at *3.

31.     Two other federal courts have denied motions to remand the same basic putative class action complaint claiming privacy violations on a healthcare provider's website, finding in both cases that removal to federal court was appropriate under the Federal Officer Removal Statute. *Doe, et al. v. UPMC*, 2020 WL 4381675, *7 (W. D. Pa. Jul.31, 2020), *appeal denied*, 2020WL 5742685 (W.D. Pa. Sept. 25, 2020) ("UPMC has shown that by its participation in the Meaningful Use Program, it was 'acting under' DHHS when it engaged in the conduct at issue in the Complaint."); *Doe v. ProMedica Health Sys., Inc.*, 2020 WL 7705627, *3 (N.D. Ohio Oct. 30, 2020), *appeal denied*, 2020 WL 7705713 (N.D. Ohio Dec. 14, 2020) ("Because Defendant's participation assisted the federal government in achieving that goal [to create a unified system of patient electronic health records], Defendant has satisfied the 'acting under' prong").

**D.     *Plaintiff's Claims Relate to the Actions Under Color of Federal Office***

32.     Under Section 1442(a)(1), the conduct at issue in the case must also "have been undertaken for *or relating to*" the federal office. 28 U.S.C. § 1442(a)(1) (emphasis added).

33.     As set forth above, plaintiff's Petition targets SSM Health's alleged use of common website analytical tools on SSM Health's websites, along with the use of marketing companies in conjunction with its MyChart patient portal and public website. (*E.g.,* Pet. ¶¶ 19, 72, 78; *see also id.* ¶ 150 (defining proposed class to include current or former patients "who exchanged communications at *Defendant's websites, including www.ssmhealth.com and any other SSM Health Care Corporation affiliated website*"); *id.* ¶ 19 (alleging that SSM Health "deploys source code on the websites it operates, including https://www.ssmhealth.com," which links directly to SSM Health's MyChart patient portal); *id.* ¶ 89 (alleging that plaintiff communicated with his health care providers about treatment for his medical conditions).)

34.     The gravamen of plaintiff's Petition thus targets SSM Health's efforts to satisfy the Promoting Interoperability and Meaningful Use program criteria. Stated plainly, for the Court to rule in plaintiff's favor, it would need to restrict the conduct that SSM Health could undertake to meet those federal standards. This infringement on a federal prerogative is precisely the type of case that "relates to" or is "undertaken for" federal office. *See ProMedica*, 2020 WL 7705627, at *3 (finding that defendant established a causal nexus; "As *UPMC* held, 'There is plainly a connection or association between [the health care provider's] website management and marketing strategies and the Meaningful Use program, particularly the incentives that are tied to patient participation and usability.'") (quoting *UPMC*, 2020 WL 4381675, at *6).

### E. *SSM Health Raises Colorable Federal Defenses to Plaintiff's Claims*

35. The final requirement for removal under the Federal Officer Removal Statute is to raise a colorable defense. For a defense to be considered colorable, courts "do not require that the federal officer virtually 'win his case before he can have it removed.'" *Robinson*, 2020 WL 376324, *2 (quoting *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999)). Instead, "it need only be plausible." *United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001).

36. There are at least two colorable federal defenses to the claims at issue here that satisfy this requirement. *First*, as they relate to alleged liability for links to the patient portal, plaintiff's claims are preempted by federal law. Federal law preempts state action "either by express provision, by implication, or by a conflict between federal and state law." *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995); *see also Murphy v. Nat'l Coll. Ath. Ass'n*, 138 S. Ct. 1461, 1480 (2018) (discussing preemption doctrines). Under this precedent, a defendant cannot be held liable under state law for doing exactly what the federal government wants them to do. *See, e.g., Sherfel v. Newsom*, 768 F.3d 561, 568 (6th Cir. 2014) ("Conventional conflict pre-emption principles require pre-emption where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.") (quoting *Boggs v. Boggs*, 520 U.S. 833, 844 (1997)).

37. *Second*, SSM Health will argue that the First Amendment bars plaintiff's claims. As the Supreme Court has held: "While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the 'vast democratic forums of the Internet' in general, and social media in

10

particular." *Packingham v. North Carolina*, 137 S.Ct. 1730, 1735 (2017) (quoting *Reno v. Am. Civil Libs. Union*, 521 U.S. 844, 868 (1997)).

38. And, in *IMS Health Co. v. Sorrell*, 564 U.S. 552 (2011), the Court further made plain that the First Amendment protects both "the creation and dissemination of information," which are both "speech within the meaning of the First Amendment." *Id.* at 570 (emphasis added). Plaintiff's entire Petition challenges how SSM Health allegedly uses website analytics to enhance SSM Health's ability to speak to the public, through the creation and dissemination of information (Pet. ¶¶ 54-55, 72, 74-75, 87), and thus the First Amendment will be a defense to plaintiffs' claims.

## II. Removal is Proper Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

39. This Court separately has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) (as amended by the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 14). CAFA grants federal courts original jurisdiction over a class action when: (1) "any member of a [putative] class of plaintiffs is a citizen of a State different from any defendant," *id.* § 1332(d)(2)(A); (2) "the number of members of all proposed plaintiff classes in the aggregate is" not less than one hundred (100), *id.* § 1332(d)(5)(B); and (3) "the matter in controversy exceeds the sum or value of $5,000,000.00 exclusive of interest and costs," *id.* § 1332(d)(2).

40. "[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Gallagher v. Santander Consumer USA Inc.*, No. 4:20-cv-01083-SEP, 2021 WL 2714101, at *2 (E.D. Mo. Jul. 1, 2021) (quoting *Dart Cherokee Basis Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see also Dedloff v. Target Corp.*, No. 4:22-cv-00868-JAR, 2022 WL 5241807, at *2 (E.D. Mo. Oct. 6, 2022) ("CAFA's 'provisions should be read broadly, with a strong preference that interstate class

11

actions should be heard in a federal court if properly removed by any defendant.'") (quoting S. Rep. No. 109-14, at 43 (2005).

41. This lawsuit is a putative class action because plaintiff is representative of a putative class, and he filed the case in state court pursuant to a state rule of judicial procedure authorizing a class action. *See* 28 U.S.C. § 1332(d)(1(B); *see also* Mo. R. Civ. P. 52.08. Plaintiff captioned his Petition as a "class action," seeks relief "individually and on behalf of all others similarly situated," and requests certification of an identified class. (*See* Pet. Cover; ¶ 150.)

42. Venue in this Court is proper because the state court action is pending within the Eastern District of Missouri.

### A.   *The Parties are Diverse*

43. Under CAFA, there is "minimal diversity" so long as "any member" of the proposed class of plaintiffs is either "a citizen of a State different from [the] defendant," or is "a citizen or subject of a foreign state and any defendant is a citizen of a State." 28 U.S.C. § 1332(d)(2)(A)-(B). Courts consider the citizenship of all putative class members—both named and unnamed. *See id.* § 1332(d)(1)(D). Courts determine citizenship of the members of the proposed class as of the date of filing of the Petition. *See id.* § 1332(d)(7).

44. SSM Health is incorporated and maintains its principal place of business in Missouri and is a citizen of Missouri. Notably, while plaintiff's petition was only served on defendant SSM Health, the petition identifies two SSM Health hospitals—SSM Health St. Mary's – Centralia and SSM Health Good Samaritan Hospital – Mt. Vernon—that are located and operate in Illinois. (Pet. at pg. 1.)

45. Plaintiff's proposed class is defined as "*During the fullest period allowed by law, all Missouri citizens who are, or were, patients* of SSM Health Care Corporation, or any of its

affiliates and who exchanged communications at Defendant's websites, including www.ssmhealth.com and any other SSM Health Care Corporation affiliated website that caused disclosures of patient personally information and communications to third parties, including (but not limited to) Facebook." (Pet. ¶ 150 (emphasis added).)

46. Thus, a person who was a Missouri citizen at the time that he or she visited SSM Health's websites is a Missouri citizen within the plain language of the class definition—even if that Missouri citizen has since moved outside of the State. *See Anderson v. Davis Wright Tremaine LLP*, No. 3:20-cv-01194-AC, 2021 WL 7184127, at *5 (D. Or. July 14, 2021) (holding that plaintiffs' putative class was not limited to current Oregon citizens because plaintiffs failed to expressly limit the proposed class definition; "Thus, individuals who were Oregon citizens and sold securities who moved to another state prior to removal are members of the Class but are considered citizens of their new states for the purposes of minimal diversity under CAFA.").

47. Additionally, plaintiff alleges that "[t]he applicable statutes of limitations have been tolled as a result of Defendant's knowing and active concealment and denial of the facts alleged herein." (*Id.* ¶ 141.) Plaintiff maintains that June 16, 2022, was the earliest that he and the putative class "could have reasonably discovered" the alleged misconduct. (*Id.* ¶ 144.) In other words, plaintiff extends the five-year statute of limitations to ten years. *See* Mo. Rev. Stat. § 516.120(5) ("Within five years: …[a]n action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud.").

48. Thus, plaintiff's proposed class definition is expansive and includes individuals who: (1) were Missouri citizens at the time that they visited SSM Health's websites and are no longer Missouri citizens; (2) were SSM Health patients at the time that they visited SSM Health's

13

websites and are no longer patients; (3) visited websites that are affiliated with SSM Health, including SSM Health's public website and MyChart patient portal; and (4) visited these SSM Health affiliated websites at any time between June 16, 2012, and the present.

49. Accordingly, the circumstances here establish the diversity necessary for CAFA removal because, by a preponderance of the evidence, at least one class member is not a citizen of Missouri. *See* 28 U.S.C. § 1332(d)(2)(A).

### B. *The Purported Class Consists of More than 100 Members*

50. SSM Health does not believe that plaintiff has defined a proper class or that the class can be maintained and asserts that it is an individualized inquiry as to whether any current or former patient falls within the proposed class definition or is entitled to relief. However, the class as proposed meets CAFA's threshold requirement of at least one hundred (100) putative class members. *See* 28 U.S.C. § 1332(d)(5)(B).

51. The Petition alleges that the putative class "consists of thousands of people" (Pet. ¶ 154), and that "a class action is superior to other available methods for the fair and efficient adjudication of this action" (*id.* ¶ 163).

52. SSM Health owns and operates 22 adult hospitals, one pediatric hospital, ten post-acute care facilities, a national pharmacy benefit management company, an extensive network of physician practice operations, and other health care businesses. SSM Health *Annual Audited Financial Statements*, pg. 9 (Dec. 31, 2021), available at https://www.ssmhealth.com/SSMHealth/media/Documents/about/financial-reports/annual-financials-20-21.pdf. These facilities are located primarily in Missouri, Wisconsin, Oklahoma and Illinois, and its related businesses provide health related services in fifty (50) states. *Id.*

53. In 2020, at SSM Health Saint Louis University Hospital—just one hospital within the SSM Health system—165,010 patients were either admitted to the hospital or received care through emergency room or outpatient services. SSM Health *2021 Community Health Needs Assessment*, pg. 5 (2021), available at https://www.ssmhealth.com/SSMHealth/media/Documents/about/chna/st-louis/ssm-health-st-marys-st-louis-cardinal-glennon-saint-louis-university-chna-2021.pdf.

54. If just 0.07% of those 165,010 patients were also Missouri citizens who visited SSM Health's websites, CAFA's one-hundred-person putative class member requirement would be met. Federal jurisdiction is therefore consistent with 28 U.S.C. § 1332(d)(5)(B).

    **C.**    ***The Complaint Places in Controversy a Sum Greater than $5 Million***

55. SSM Health concedes neither liability on plaintiff's claims nor the propriety of the relief that he seeks and reserves all rights with respect to the defense of any alleged damages claim or impact to the putative class at all. That said, the Petition on its face also satisfies CAFA's amount-in-controversy element. *See* 28 U.S.C. § 1332(d)(2).

56. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 574 U.S. at 89. Where, as here, a petition does not specify a total amount sought, "the defendant's amount-in-controversy allegation should be accepted." *Id.* at 87. CAFA "tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million." *Standard Fire Ins. Co. v. Knowles*, 568 U.S 588, 592 (2013).

57. Here, plaintiff seeks an award of statutory damages of $10,000 per class member pursuant to Mo. Rev. Stat. § 542.418 (*see* Pet., Prayer for Relief, § e), plus undefined "statutory,

15

actual, compensatory, consequential, and nominal damages, as well as restitution and/or disgorgement of profits unlawfully obtained" (*id.* § g), injunctive relief (*id.* § d), and attorney's fees (*id.* § i). Assuming that there are at least 500 class members, the statutory damages alone could meet the $5 million threshold. (*Accord id.* ¶ 154 (alleging that the putative class "consists of thousands of people").) This is sufficient for removal.

58. Accordingly, SSM Health meets all requirements for removal under CAFA, and this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d).

## PROCEDURAL REQUIREMENTS FOR REMOVAL

59. SSM Health satisfies all of the procedural requirements under 28 U.S.C. § 1446.

60. SSM Health is filing this Notice of Removal within thirty (30) days of its receipt of the Petition by "service" pursuant to 28 U.S.C. § 1446. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999).

61. SSM Health files this Notice of Removal in the United States District Court of the Eastern District of Missouri, because the State court in which the action is pending, the Circuit Court for the City of St. Louis, is within this federal judicial district. This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

62. SSM Health has attached a copy of the Summons, Return Summons, and Petition that were served upon SSM Health prior to filing this Notice of Removal. Upon filing this Notice of Removal, SSM Health will promptly "give written notice thereof to all adverse parties," and will "file a copy of the notice with the clerk" of the circuit Court for the City of St. Louis.

63. In addition, SSM Health in its civil cover sheet has identified as a related case a second action pending in this Court raising substantially similar allegations. *See John Doe v. SSM Health Care Corporation d/b/a SSM Health*, Case No. 4:23-cv-00012 (E.D. Mo. Jan. 4, 2023).

## CONCLUSION

Plaintiff's Petition directly challenges practices and procedures SSM Health has taken acting under color of federal law in implementing federal policy to nationalize the health information technology infrastructure. Plaintiff's Petition is therefore appropriately removable to this Court pursuant to 28 U.S.C. § 1442(a)(1). Separately, removal is appropriate under CAFA because SSM Health is a Missouri citizen, but the putative class contains citizens of other States; the proposed class includes more than one hundred (100) members; and under plaintiffs' theories the amount in controversy exceeds the value of $5,000,000.00. *See* 28 U.S.C. § 1332(d).

Dated: January 6, 2023

                                                Respectfully submitted,

                                                */s/ John D. Comerford*
John D. Comerford, #MO60164
Adam J. Simon, #MO68396
DOWD BENNETT LLP
7676 Forsyth Blvd., Suite 1900
St. Louis, MO  63105
Telephone: (314) 889-7300
Facsimile: (314) 863-2111
Email: jcomerford@dowdbennett.com
       asimon@dowdbennet.com

Paul Karlsgodt (29004)
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO 80202
Telephone: (303) 861-0600
Facsimile: (303) 861-7805
Email: pkarlsgodt@bakerlaw.com

David A. Carney (0079824)
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone: (216) 621-0200
Facsimile:  (216) 696-0740
Email: dcarney@bakerlaw.com

*Attorneys for Defendant SSM Health Care Corporation d/b/a SSM Health*

17

## CERTIFICATE OF SERVICE

I certify that on January 6, 2023, I filed the foregoing *Notice of Removal* with the Court's ECF system. A copy will be sent electronically to all counsel of record by operation of the ECF system.

*/s/ John D. Comerford*